IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALLAN CABAK,

                                       OPINION AND ORDER

        Plaintiff,

                                     18-cv-791-bbc

        v.

JELD-WEN, INC.

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Pro se plaintiff Allen Cabak filed a complaint in the Circuit Court for Rusk County, Wisconsin, in which he alleges that his former employer, defendant JELD-WEN, Inc. (1) treated him differently and terminated him on the basis of his age and disability and in retaliation for complaining about it, in violation of the Americans With Disabilities Act and the Age Discrimination in Employment Act; and (2) committed various unsafe practices in violation of the Occupational Safety and Health Act.  Defendant removed the case to this court on September 21, 2018.  On December 6, 2018, plaintiff filed a document with the court entitled "discovery request," in which he alleges that one of defendant's employees falsely imprisoned him on three occasions and that other employees are guilty of criminal conduct.  Dkt. #10-1.  The case is before the court on defendant's motion for summary judgment.  Dkt. #23.  Because plaintiff has failed to produce any evidence to establish the key elements of any of his claims, I am granting the motion and entering judgment in favor of defendant.

        Although plaintiff filed a short brief in response to defendant's motion for summary

judgment, he failed to respond to any of defendant's proposed findings of fact or file any

proposed findings of fact in support of his own to support his claims. This court's summary

judgment procedures, which are attached to the November 8, 2018 preliminary pretrial

conference order entered in this case, dkt. #8, warn litigants that "[u]nless the responding

party puts into dispute a fact proposed by the moving party, the court will conclude that the

fact is undisputed." Proc. to be Followed on Motions for Summ. Judg., § II.C. at p. 6. The

procedures also instruct parties that

> [A]ll facts necessary to sustain a party's position on a motion for summary judgment must be explicitly proposed as findings of fact. . . The court will not search the record for factual evidence. Even if there is evidence in the record to support your position on summary judgment, if you do not propose a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion. Your brief is the place to make your legal argument, not to restate the facts.

Id. at p. 1. The Court of Appeals for the Seventh Circuit "has routinely held that a district

court may strictly enforce compliance with its local rules regarding summary judgment

motions." Abraham v. Washington Group International, Inc., 766 F.3d 735, 737 (7th Cir.

2014). See also Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 630-31 (7th Cir.

2010) (holding that the district court did not err when it deemed the defendant's proposed

findings of fact admitted and refused to consider additional facts for the plaintiff's failure

to follow the local procedures on proposed findings of fact). Therefore, in accordance with

this court's summary judgment procedures, I have considered as undisputed any facts

proposed by defendant that are supported properly and sufficiently by admissible evidence.

From defendant's proposed findings of fact, I find the following facts to be material

and undisputed.

UNDISPUTED FACTS

A.  The Parties

Defendant JELD-WEN, Inc. is a manufacturer of custom windows and doors, with multiple production facilities, including one located in Hawkins, Wisconsin.  Plaintiff Allan Cabak was employed by defendant from May 29, 1984 until December 10, 1998, when he was terminated involuntarily.  On April 16, 2012, defendant rehired plaintiff as an assembler assigned to its specialty department.

Plaintiff was covered by a collective bargaining agreement between defendant and Carpenters International Council, Local 1435, which contained a grievance procedure, an equal employment opportunity provision and an attendance policy.  Defendant also has a fair employment practices policy and an employee handbook, both of which prohibit discrimination, harassment and retaliation on the basis of disability and other protected categories.  On November 1, 2013, defendant issued plaintiff a written warning for violating defendant's policies regarding harassment and abusive language because he got into an argument with a Latino co-worker and referred to the co-worker as "a stupid fucking spic."

Plaintiff was spoken to on several occasions regarding inappropriate or threatening comments to co-workers.  In 2016, he was told not to refer to women as stupid or to confront a female quality inspector for doing her job, by saying she "almost got him in trouble with his manager so she better not go to him anymore or else."

Under the labor agreement, an employee is entitled to use up to 16 hours of personal time during a calendar quarter for personal reasons, but an employee who exceeds 16 hours of personal time is subject to discipline. An employee who takes time off during a shift without giving notice prior to the start of his or her shift will be assessed double hours for the time missed. On December 16, 2013 and June 17, 2014, plaintiff received written warnings for violating the attendance policy.

All employees are required to undergo annual safety training, which includes detailed instructions on dealing with blood borne pathogens in the workplace. In the event of an incident involving blood, an employee is directed to remain at the site of the incident until it can be addressed by an EMT or other trained safety personnel. Under no circumstances should an employee do anything that might expose a co-worker to a blood borne pathogen.

At 9:30 a.m., after the start of his shift on April 12, 2017, plaintiff told Joe Tatrow, a Line Lead, that his "ass ruptured," he "was bleeding out of his ass" and that he needed to leave at 10:30 a.m. Plaintiff's shift had started at 4:30 a.m. and ended at 3:00 p.m. Tatrow allowed plaintiff to leave but told him that because he had not requested the time off before the start of his shift, the time could be charged "double hours" against his attendance record. Tatrow also stated that he would need to inform Trent Tobias, the Coordinating Group Manager. Plaintiff became upset, but said nothing further other than that he did not think he should be assessed double points. About 10 minutes later, plaintiff returned to the specialty department office where Tatrow was sitting. Plaintiff was holding a large wad of toilet paper with blood on it. He stated, "Look. Now do you believe me," and placed the

4

bloody wad of toilet paper on the specialty department office desk.

Tatrow immediately told plaintiff to remove the toilet paper from the table and dispose of it properly. After plaintiff picked up the toilet paper, Tatrow sanitized the desk because he was concerned that he had been exposed to a possible blood borne pathogen. Tatrow also was concerned that other co-workers had been exposed because the bathroom from which plaintiff presumably obtained the bloody toilet paper was 250 to 300 feet from the specialty department office, requiring plaintiff to walk past a number of co-workers holding the bloody toilet paper. Tatrow considered plaintiff's conduct to be both disgusting and a serious violation of defendant's safety standards.

Tatrow told Ron Foley, one of the group managers, what had happened. Tatrow told Foley that he was both disgusted with plaintiff's actions and concerned about being exposed to the bloodied tissue. Foley asked Tatrow to prepare a handwritten statement of the incident, which Tatrow did that day. Foley notified Tobias, his boss, about plaintiff's actions and Tatrow's concerns. The incident was also brought to the attention of Chuck Walker, the human resources manager for both the Hawkins plant and another manufacturing facility located in Rantoul, Illinois.

At the time, it was defendant's practice to document violations of company policy by issuing a written warning, with the understanding that if, upon further review, the company decided the behavior in question was serious enough to justify a more severe penalty, it would take further action. Consistent with that practice, Tobias issued plaintiff a written warning on April 19, 2017. Soon thereafter, Walker received reports that plaintiff was bad

mouthing Tobias and Tatrow and making threats to them, and that both Tobias and Tatrow had been expressing concerns for their personal safety. On April 24, 2017, Terry Knowlton, the group manager for the specialty department, issued plaintiff another written warning for violating the company's attendance policy. That day, Walker told plaintiff in a meeting at which Tobias also was present that plaintiff was being suspended for three days. During the meeting, plaintiff admitted that what he had done on April 12, 2017 was wrong but voiced a complaint that Knowlton had shared an inappropriate and racist joke with a co-worker. Walker found the joke offensive, investigated the matter and immediately counseled Knowlton about the inappropriate nature of the joke.

Over the next several days, Walker talked to Joe Lentini, the plant manager. He reviewed plaintiff's employment history, including his prior discipline and the incident on April 12, 2017. Walker and Lentini reached the joint conclusion that plaintiff's conduct on April 12, 2017 was a serious violation of the company's safety policies and practices and that his employment should be terminated. Therefore, on April 26, 2017, Walker emailed the recommendation for plaintiff's termination to Eric Martin, one of the company's in-house attorneys. Martin agreed with the recommendation.

After arriving at work on April 28, 2017, Tobias, Foley and Knowlton met with plaintiff and told him that his employment was being terminated. Plaintiff did not say anything about having a disability and had never provided defendant any medical documentation suggesting that he had any disability. Plaintiff refused to sign the termination notice presented to him.

On February 28, 2018, plaintiff filed a charge of discrimination against defendant with the United States Equal Employment Opportunities Commission, alleging discrimination on the basis of age, disability and retaliation. All of the events that plaintiff alleges in the charge of discrimination and in his complaint in this case occurred on or before April 28, 2017, at least 306 days prior to the filing of the charge of discrimination.

OPINION

A. Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In this case, defendant bears the burden of establishing that no material facts are in genuine dispute. Any doubt as to the existence of a genuine issue must be resolved against defendant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970). See also Lawrence v. Kenosha County, 391 F.3d 837, 841 (7th Cir. 2004).

Defendant is entitled to judgment as a matter of law if plaintiff "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion

by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." Grant v. Trustees of Indiana University, 870 F.3d 562, 568 (7th Cir. 2017).

## B. Discrimination and Retaliation Claims

Defendant argues that plaintiff's discrimination or retaliation claims are untimely because he failed to file an administrative charge with the Equal Employment Opportunity Commission within the required statute of limitations period. To bring claims under either the Americans with Disabilities Act or the Age Discrimination in Employment Act in Wisconsin, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission within 300 days after the alleged unlawful employment practice occurred. Stepney v. Naperville School District 203, 393 F.3d 236, 240-41 (7th Cir. 2004) (citing 42 U.S.C. § 2000e–5(e)(1), as incorporated by 42 U.S.C. § 12117(a), with respect to ADA discrimination claim); McNeil v. Salvation Army, 754 Fed. Appx. 469, 471 (7th Cir. 2019) (ADA retaliation claim); Wrolstad v. CUNA Mutual Insurance Society, 274 F. Supp. 3d 894, 902 (W.D. Wis. 2017) (citing 29 U.S.C. § 626(d)(1)(B); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) (with respect to ADEA discrimination and retaliation claims).

In this case, it is undisputed that all of the alleged discriminatory and retaliatory conduct in this case occurred on or before plaintiff's termination on April 28, 2017. Plaintiff did not file his charge of discrimination until 306 days later, on February 28, 2018.

8

Although plaintiff alleges in his complaint that he had a conversation with Tobias on June 23, 2017, during which Tobias allegedly stated that the reason that plaintiff was terminated "was mostly medical," dkt. #1-1 at 7, he has failed to present any evidence in support of this allegation.  However, even if Tobias had made such a statement, it would not restart or extend plaintiff's 300-day statute of limitations period, which commences at the time the employment decision was made and communicated to the employee.  Stepney, 393 F.3d at 240-41.  "The period begins to run when the employee knows he has been injured, 'not when [he] determines that the injury was unlawful.'"  Id. (quoting Sharp v. United Airlines, Inc., 236 F.3d 368, 372 (7th Cir. 2001)).  Accordingly, plaintiff's discrimination and retaliation claims are barred by the applicable statute of limitations.


B.  Remaining Claims

In his complaint and "discovery request," plaintiff alleges that he is bringing claims against defendant for "painting violations" of the Occupational Safety and Health Act and against Walker, defendant's human resource manager, for falsely imprisoning him on three occasions by locking him in an office without a union representative.  He also suggests that other employees assaulted him and another co-worker.  Plaintiff has abandoned these claims by failing to explain them or present any evidence in support of them.  In addition, most of these claims may not be brought in this court.

The Occupational Safety and Health Act does not provide a private cause of action for actions taken against employees in retaliation for filing a complaint under the statute.

Johnson v. Interstate Company, LLC, 849 F.3d 1093, 1097-1098 (D.C. Cir. 2017). Rather, plaintiff would have had to file a complaint with the Secretary of Labor within 30 days after the alleged violation occurred. 29 U.S.C. § 660(c)(2). To the extent that plaintiff is making a claim that Walker violated his rights to union representation as recognized in NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1970), he is both too late and in the wrong forum to assert such a claim. Those claims are subject to a six month statute of limitations period and may be brought only in an unfair labor practice charge filed with the National Labor Relations Board. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959); 29 U.S.C. § 160(b). Finally, plaintiff's allegations of assault are crimes for which he may not bring a private civil enforcement action. Israel Aircraft Indusustries Ltd. v. Sanwa Business Credit Corp., 16 F.3d 198, 200-01 (7th Cir. 1994) ("No case during the last generation creates a private right of action to enforce a statute cast in the form of a criminal prohibition."). Accordingly, defendant is entitled to summary judgment with respect to all of plaintiff's remaining claims.

ORDER

IT IS ORDERED that defendant JELD-WEN, Inc.'s motion for summary judgment,

dkt. #23, is GRANTED.  The clerk of court shall enter judgment in favor of defendant and

close this case.

Entered this 15th day of November, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge